# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **PATRICIA DIANA SLOAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-cv-00104** |
| **v.** | ) | **Judge Wiseman/Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff has filed a previous claim for disability benefits, for which an Administrative

Law Judge issued an Unfavorable Hearing Decision on January 26, 2007. Docket No. 11, Attachment ("TR"), p. 11. Plaintiff did not appeal this decision, and it is, therefore, administratively final. 20 C.F.R. §§ 404.987-404.989; TR 11.

Plaintiff filed her current application for Supplemental Security Income ("SSI") on September 8, 2008, alleging that she had been disabled since September 4, 2008, due to Posttraumatic Stress Disorder ("PTSD"), anxiety, depression, bulging disc, and pain in her left arm and right knee. *See, e.g.,* TR 11, 133, 176. Plaintiff's application was denied both initially (TR 78) and upon reconsideration (TR 86). Plaintiff subsequently requested (TR 88) and received (TR 99) a hearing. Plaintiff's hearing was conducted on February 26, 2010, by Administrative Law Judge ("ALJ") Robert L. Irwin. TR 31. Plaintiff and Vocational Expert, Edward Smith, appeared and testified. TR 29.

On April 2, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 22-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since September 8, 2008, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: Degenerative disc disease; Osteoarthritis; Post Traumatic Stress Disorder; Mood Disorder, not otherwise specified; Gastro Esophageal Reflux Disease (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

functional capacity to perform light work as defined in 20 CFR 416.967(b), except she can only occasionally climb, crouch, crawl, kneel, stoop, bend; can stand/walk for two to four hours in an eight hour day; can sit for six to eight hours in an eight hour day; would need to be able to change positions every two hours; and perform no more than occasional overhead reaching with either arm. Mentally, she would be able to understand and remember simple tasks; could adapt to infrequent changes and set limited goals; could concentrate on and persist for simple tasks; and would have some, but not substantial, difficulty interacting with the public, co-workers and supervisors.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July 16, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 8, 2008, the date the application was filed (20 CFR 416.920(g)).

TR 13-22.

On April 12, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 126. On October 19, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This

civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

>(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
>(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
>(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
>(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
>(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) failing to properly consider the opinion of consultative examiner Mark Loftis; (2) failing to give weight to the opinion of mental health counselor, Melissa Spaulding; (3) "improperly dismissing" the opinion of Family Nurse Practitioner, Faye Smith; (4) failing to find that Plaintiff meets or equals Listings 12.05(c) and/or 12.05(d), or in the alternative, Listings 12.04 or 12.06; (5) finding that Plaintiff failed to prove that a significant change had occurred in her physical and mental conditions, such that the RFC finding of the prior ALJ was binding; (6) improperly evaluating Plaintiff's subjective complaints of pain; and (7) improperly evaluating the testimony of the vocational expert.[2]  Docket No. 14.

---

[2]In her concluding remarks, Plaintiff raises for the first time the contention that she *may* meet Grids 201.09 and/or 202.09, simply stating: "The Claimant may meet GRIDS 201.09 and/or 202.09 as well."  Plaintiff does not explain or analyze her argument, nor does she provide any details about this new claim.  Because Plaintiff does not analyze her contention, neither will the undersigned, as it is not the Court's function to craft Plaintiff's arguments for her.  *See, e.g.,*

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1.  The ALJ's Consideration of the Opinion of Consultative Examiner Mark Loftis

Plaintiff argues that the ALJ did not properly consider the findings of consultive examiner Mark Loftis.  Docket No. 14.  Specifically, Plaintiff contends that the ALJ failed to consider the Full Scale IQ score of 68 from Mr. Loftis' Consultative Psychological Evaluation.  *Id.*  Plaintiff additionally stresses that Mr. Loftis' findings indicate that she was prone to anxiety and episodes of extreme panic resulting from posttraumatic stress disorder, that she may have difficulty relating to others in a work environment, and that her overall functional limitations

---

*United States v. Phibbs*, 999 F.2d 1053, 1080, n. 12 (6th Cir. 1993).

regarding her flexibility and adaptability were moderately to severely impaired. *Id.* Plaintiff essentially asserts that Mr. Loftis' findings should be relied upon because they accurately reflect her overall mental conditions, and because they demonstrate that she meets or equals a Listing. *Id.*

Defendant argues that the ALJ in the case at bar properly considered Mr. Loftis' evaluation findings because those findings were considered by the ALJ in Plaintiff's 2007 hearing for her earlier disability application, and because the findings of the earlier ALJ are binding upon the current ALJ. Docket No. 17.

As an initial matter, Plaintiff did not appeal the prior ALJ's decision denying her benefits, and that decision is administratively final. 20 C.F.R. §§ 404.987-404.989. Accordingly, for the application now at issue, the unadjudicated period for consideration began on January 27, 2007, the day after the rendering of the prior ALJ's unfavorable decision denying Plaintiff's benefits. *See* TR 11.

With regard to the current ALJ's discussion of Mr. Loftis' evaluation, the ALJ stated:

> The claimant also points to the opinions of consultative examiner Mark Loftis who examined the claimant in 2003 during the course of her previous claim. As noted above, the findings of the previous hearing are administratively final and the undersigned declines to re-open all the evidence in that case. Suffice to say, that these allegations were addressed in the prior decision and no new evidence has been presented.

TR 19.

The ALJ's decision in the case at bar clearly indicates that he was aware of Plaintiff's argument, was aware of Mr. Loftis' opinion, and was aware that that opinion had been addressed in the prior ALJ's decision. As the ALJ explained, the previous decision is final, and Plaintiff

has adduced no new evidence to warrant re-opening the evidence in that case. Accordingly, the ALJ's treatment of Mr. Loftis' earlier evaluation was proper, and Plaintiff's argument on this point fails.

## 2. Weight Accorded to Opinion of Mental Health Counselor Melissa Spaulding

Plaintiff maintains that the ALJ erred in failing to give appropriate weight to the opinion of mental health counselor Melissa Spalding. Docket No. 14. Specifically, Plaintiff explains that Ms. Spaulding has a masters degree in counseling, and argues that her opinion, therefore, should be evaluated under the same criteria as Mr. Loftis' opinion, as he likewise has a masters degree in counseling. *Id.* Plaintiff also argues that the ALJ should have given Ms. Spaulding's evaluation more weight than the Psychiatric Technique Forms that were completed by non-examining personnel. *Id.*

Defendant responds that the ALJ considered, and properly declined to accord any weight to, the opinions expressed by Ms. Spaulding in her Tennessee Clinically Related Group Form assessments because: (1) she was not Plaintiff's psychiatrist; (2) she was not Plaintiff's treating counselor; (3) she did not have an established, long-term treatment relationship with Plaintiff; and (4) her findings were inconsistent with other evidence in the record. Docket No. 17.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. ...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Although Ms. Spaulding did examine Plaintiff, the ALJ did not consider her a treating source whose opinion is subject to being given great weight. In fact, the ALJ expressed concern because of the facts that, (1) the record did not indicate Ms. Spaulding's professional or medical credentials to assess Plaintiff with regard to her alleged disability; (2) she did not have an established medical relationship with Plaintiff; and (3) her observations were contradictory to other medical evidence in the record. TR 19; 412-15, 419. The ALJ explained:

> ... the claimant points to the form entitled The Tennessee Clinically Related Group Form for Adults Age 18 and Above (Exhibit B18F) to support her contention she has marked restrictions in interpersonal functioning, concentration, persistence and pace, and adaption to change. The undersigned has reviewed and considered this form, but finds it is not persuasive. It appears that this is a form used to obtain reimbursement for services from the State. The "rater" who filled out this form was Melissa Spaulding. (Exhibit B18F at p. 5). Her qualifications to make these assessments are not stated, nor are they apparent as she is not a psychiatrist nor the claimant's treating counselor. Her name is not mentioned elsewhere in Plateau's treatment records. Furthermore, she typed on the form that the claimant had "increased aggression towards others, SI, hx of SA" while Adam Cooper, MSN, APRN BC's treatment notes state the claimant is not suicidal or violent and is not an imminent risk. He specifically noted "No SI or HI. No A/V Hallucinations, I/J: Good." Given all these factors, the undersigned declines to grant any weight to Ms. Spaulding's opinions.

TR 19, *citing* TR 415, 419.

Consistent with the Regulation requirements, the ALJ specifically discussed Ms. Spaulding's opinion and articulated his rationale for discounting it. *See* 20 C.F.R. § 416.927. The ALJ properly considered Ms. Spaulding's opinion and it was within his discretion to accord no weight to it. Accordingly, Plaintiff's argument fails.

**3. Weight Accorded to the Opinion of Family Nurse Practitioner Faye Smith**

Plaintiff contends that the ALJ erroneously discounted the opinion of Family Nurse Practitioner ("FNP") Faye Smith, when he stated that a FNP is not an "acceptable medical source" who can be used to establish the existence of a medically-determinable impairment that can reasonably be expected to produce the alleged symptoms; who can be used to assess a claimant's RFC; or who can be considered a treating source whose medical opinions may be entitled to controlling weight. Docket No. 14. Plaintiff contends that the Regulations specifically list nurse practitioners as acceptable "other sources," such that the ALJ improperly dismissed Nurse Smith's opinion. *Id.*

Defendant responds that, contrary to Plaintiff's argument, the ALJ did not discount Nurse Smith's opinion because she was a nurse practitioner, but rather considered and discounted Nurse Smith's opinion because; (1) Nurse Smith rendered two different opinions within one week, almost a year and a half after she had last seen Plaintiff; (2) Nurse Smith had not signed Plaintiff's discharge letter, which the ALJ noted was "worrisome when her actions contradict those of her supervising physician"; and (3) Nurse Smith's opinions were inconsistent with the medical and testimonial evidence. Docket No. 17, *citing* TR 19.

With regard to the ALJ's consideration of Nurse Smith's opinion, the ALJ stated:

> The claimant has submitted two Medical Source Statement of Ability to do Work-Related Activities (Physical) completed by E. Faye Smith, FNP. (Exhibits B19F; B20F). The first for m is dated February 12, 2010 (Exhibit B19F) and the second form is dated February 18, 2010 (Exhibit 20F). The undersigned has several problems with these Medical Source Statements and for the reasons explained below, declines to afford them weight. First, there is no explanation for why two forms were submitted or for the different opinions contained in each form.
>
> Second, there is no evidence that Ms. Smith treated the claimant after August 25, 2008 when the claimant was discharged from the

practice of Dr. Capparelli after failing three drug screens. It is difficult to credit these opinions that purport to assess the claimant's current condition when Ms. Smith has not even seen the claimant in over a year and a half. Furthermore the undersigned notes that Ms. Smith did not sign the letter that discharged the claimant from Dr. Capparelli's practice. This is worrisome when her actions contradict those of her supervising physician. . . .

Third, she stated her opinions were based upon the claimant's MRI of March 21, 2003 finding degenerative disc dessication at L5-S1 with spinal stenosis; degenerative lesion on her right patella (knee); bilateral wrist carpal tunnel syndrome; major depressive disorder, PTSD, and panic disorder with agoraphobia. (Exhibit 20F). The bases for her opinions however are not entirely consistent with the medical evidence from the claimant's mental health professionals, the claimant's objective medical tests and treatment records, or the claimant's testimony. . . .

Ms. Smith's opinions are also not consistent with the objective medical evidence of record regarding the claimant's physical impairments. For example, there is no evidence that the claimant has ever been diagnosed with carpal tunnel syndrome. As to the claimant's alleged back pain, an MRI of her lumbar spine on March 21, 2003 revealed degenerative disc desiccation at L5-S1 associated with *mild* spinal stenosis and a broad based posterior disc bulge. A bone scan conducted the same day, revealed *possible* degenerative or traumatic lesion in the region of the right patella. (Exhibit B2F). No further tests were conducted thereafter. The qualifiers "mild" and "possible" are entirely ignored by Ms. Smith, when she should be alert for these qualifiers given the lack of medication compliance by the claimant. Finally, Ms. Smith's own treatment notes do not document posttraumatic stress disorder, anxiety, or panic attacks after 2006. Her treatment notes also document she diagnosed osteoarthritis, elbow tendonitis, and hip pain in 2007. However, no objective tests, not even X-rays, were ever taken of the claimant's hips or left elbow. (Exhibit 3F).

TR 19-20 (emphasis in original).

While Plaintiff is correct that the ALJ noted that Nurse Smith, as an FNP, is not an "acceptable medical source" under the Regulations for purposes of being considered a treating source whose medical opinions may be entitled to controlling weight, the ALJ did not discount

Nurse Smith's opinion on that basis. As can be seen by the ALJ's detailed discussion of Nurse Smith's opinion, the ALJ discounted Nurse Smith's opinion, *inter alia*, because she submitted two different opinions one week apart, because she had not seen Plaintiff in approximately a year and a half when she completed the forms proffering opinions regarding Plaintiff's (then) "current" condition, because her opinion was inconsistent with the evidence of record regarding Plaintiff's mental and physical conditions, because her opinion was inconsistent with Plaintiff's own testimony, and because her opinion was inconsistent with, and unsupported by, her own treatment notes and lack of objective testing. *Id.*

The ALJ properly considered, and discounted, Nurse Smith's opinion. The ALJ provided a detailed articulated rationale explaining his reasons for discounting Nurse Smith's opinion; accordingly, Plaintiff's argument fails.

**4. Meeting or Equaling a Listing**

Plaintiff maintains that the ALJ erred in failing to find her disabled under Listing 12.05(c) and/or 12.05(d), and alternatively contends that she may meet the requirements of Listing 12.04 or 12.06. Docket No. 14. Specifically, Plaintiff argues that she meets Listing 12.05(c) because: (1) Mr. Loftis assessed her with a Full Scale IQ of 68; (2) Volunteer Behavioral Health Care System ("VBHCS") assessed her with at least marked limitations in various social and mental capacities; (3) she has additional physical limitations, including a broad based disc bulge and degenerative disc desiccation at L5-S1, a traumatic lesion in the region of the right patella, headaches, arthritis, and COPD; and (4) she has additional mental limitations due to depressive disorder and PTSD. *Id.*

Plaintiff contends that she meets Listing 12.05(d) because: (1) Mr. Loftis assessed her

with a Full Scale IQ of 68; (2) VBHCS found that she was markedly limited in her adaptation to change; (3) VBHCS found that she was a person with a severe and persistent mental illness; (4) VBHCS found that she was extremely limited in her activities of daily living, markedly limited in her interpersonal functioning, markedly limited in her concentration and task performance, and markedly limited in her ability to adapt to change; and (5) VBHCS assessed her with a GAF of 50 in September 2008 and with a GAF of 48 in December 2009. *Id.*

Plaintiff contends that she *may* meet Listing 12.04 or 12.06 because the VBHCS limitations discussed above demonstrate that Plaintiff had extreme limitations in her activities of daily living; marked limitations in interpersonal functioning; marked limitations in concentration, task performance, and pace; and marked limitations in her adaptation to change. *Id.*

Defendant argues that Plaintiff has failed to meet her burden of establishing that her impairments met or equaled all of the necessary criteria under any of the mentioned listings. Docket No. 17. Defendant notes that Listing 12.05 contains a diagnostic description for mental retardation and four sets of criteria. *Id., citing* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A. Defendant contends that Plaintiff does not meet the requisite criteria in the diagnostic paragraph that applies to Listings 12.05(c) and 12.05(d) because the diagnostic description states that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (*i.e.* before age 22), and Plaintiff was 44 years old at the time she underwent the IQ testing upon which she relies. *Id.* Additionally, Defendant argues that IQ tests themselves are not a conclusive indicator of mental retardation, but rather, comprise only part of an overall intellectual functioning assessment. *Id.*

Defendant further contends that, in arguing that Mr. Loftis' assessed IQ score demonstrates that she is mentally retarded, Plaintiff asserts a conclusion that Mr. Loftis did not reach. *Id.*

With regard to Plaintiff's argument that she *may* meet Listings 12.04 or 12.06, Defendant argues that Plaintiff's contention must fail because she has failed to develop her argument. *Id.* Defendant essentially contends that is not the Court's job to create or develop Plaintiff's arguments for her, and that, by simply stating that she *may* meet Listings 12.04 or 12.06, without "developed argumentation," her claim should be deem waived. *Id.* Defendant additionally argues that her claim must fail because her aliments are not of the severity required to satisfy the requirements of those Listings. *Id.*

Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation, followed by four criteria, one of which must be satisfied with the criteria set forth in the introductory paragraph in order to meet or equal this Listing. *See* Listing 12.05(a). As has been noted, Plaintiff's argument is that she meets the criteria of 12.05(c) and/or 12.05(d). Docket No. 14. Listing 12.05(c)-(d) states as follows:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>        ...
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and *significant* work-related limitation or function.
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70,

resulting in *at least two* of the following:

1. *Marked* restriction of activities of daily living; or
2. *Marked* difficulties in maintaining social functioning; or
3. *Marked* difficulties in maintaining concentration, persistence, or pace; or
4. *Repeated* episodes of decompensation, each of extended duration.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05(c)-(d) (emphasis added).

As an initial matter, in order to meet or medically equal Listing 12.05(c), Plaintiff must establish that she met all the required criteria. *See Sullivan v. Zebly*, 493 U.S. 521, 530 (1990). The required criteria to meet or equal Listing 12.05(c) are: (1) significantly subaverage general intellectual functioning, resulting from anatomical, physiological, or psychological abnormalities which can be established by medically acceptable clinical and laboratory diagnostic techniques (*see* 20 C.F.R. §§ 404.1508, 404.1525, 416.908, 416.925); (2) demonstrated deficits in adaptive functioning; (3) an onset prior to age 22; (4) a valid verbal, performance, or full scale IQ of 60 through 70; and (5) a physical or other mental impairment imposing an additional and significant work-related limitation or function. The requirements to establish mental disability pursuant to Listing 12.05(d) are stated above.

Plaintiff appears to argue that, had the ALJ considered Plaintiff's full scale IQ score of 68, assessed by Mr. Loftis, and the findings from Ms. Spaulding and VBHCS, then Plaintiff would qualify for benefits under 12.05(c) and/or 12.05(d), or in the alternative, 12.04 or 12.06. Docket No. 14.

As has been discussed above, the ALJ properly declined to re-consider Mr. Loftis' opinion, as it had been considered and fully adjudicated in Plaintiff's prior application.

Similarly, as has been discussed above, the ALJ properly considered, and discounted, Ms. Spaulding's opinion. Moreover, in the case at bar, the ALJ specifically considered the reports from the VBHCS, noting that Plaintiff had been treated "on and off over the years," and stating:

> In 2008 she returned for treatment, underwent two counseling sessions, and had two medication management appointments in September and October 2008. At her first appointment, Dr. Gebrow noted she reported that her panic/anxiety had improved. (Exhibit B6F at p. 16). Similarly, at her second appointment, she reported her panic attacks were less frequent and less intense since taking Prozac. (Exhibit B6F at p. 19). Dr. Gebrow noted she was minimally depressed. (Exhibit B6F at p. 19). She then quit keeping her appointments. (Exhibit B6F; B15F; B18F). She resumed treatment in December 2009 and kept two medical management appointments, one in December and one in January 2010. (Exhibit B18F). This on and off treatment is not the behavior exhibited by persons with disabling mental impairments. Furthermore, in 2009, due to medical improvement, her diagnosis was changed to mood disorder, not otherwise specified from major depressive disorder and her diagnosis of panic disorder without agoraphobia was eliminated. The evidence in the record shows that the claimant's mental impairments are not as severe as she claims.

TR 18, *citing* TR 325-51, 399-408.

Accordingly, because the ALJ determined that the evidence of record demonstrated that Plaintiff's impairments were not as severe as she claimed, the ALJ determined that Plaintiff did not meet or equal the requirements of Listing 12.05(c) or 12.05(d). This determination was proper.

The Plaintiff's contention that, in the alternative, she may have met or equaled the requirements for Listings 12.04 and 12.06 similarly relies on her allegations that the ALJ failed to consider her IQ score and the VBHCS findings. Docket No. 14. Because the ALJ properly considered the record as explained above, the ALJ's assessment that Plaintiff did not meet or

equal these Listings was likewise proper and Plaintiff's arguments fail.

**5.  Plaintiff's Condition Subsequent to the Denial of Her First Claim**

Plaintiff asserts that the ALJ erroneously found that ALJ Kile's 2007 determination

regarding her Residual Functional Capacity ("RFC") was binding on her current application

absent evidence of a change in condition since the prior hearing.  Docket No. 14.  Specifically,

Plaintiff contends that there has been a significant worsening in her physical and mental

conditions since ALJ Kile's 2007 Unfavorable Hearing Decision.  *Id.*  In support of this

contention, Plaintiff cites the DDS Medical Consultant Analysis Report ("Analysis") completed

by Mr. James Millis on December 9, 2008.  *Id.*

Defendant argues that the ALJ was correct to adopt the disability findings from

Plaintiff's previous case because Plaintiff has adduced no new and material evidence

demonstrating that a significant change in her physical and mental conditions has occurred.

Docket No. 17.  Defendant argues that Dr. Millis' 2008 RFC determination, upon which Plaintiff

relies, is "almost exactly the same" RFC finding made by the ALJ in Plaintiff's prior case.  *Id.*

Defendant additionally argues that the RFC evidence from the other physicians of record is also

consistent with the RFC finding made by the ALJ in Plaintiff's prior case.  *Id.*  Defendant

contends that there is no new or material evidence because all of the evidence leads to the

conclusion that the RFC established in Plaintiff's prior case is consistent with the record in the

instant case.  *Id.*

While Plaintiff relies upon Dr. Millis' 2008 Assessment to demonstrate that her condition

has worsened, Plaintiff cannot establish that the results of Dr. Millis' assessment are "new and

material" evidence.  His findings were part of the record of the current proceeding.  *See* TR 390-

98.  Although Dr. Millis' findings were not part of Plaintiff's medical record at the time

Plaintiff's prior Unfavorable Hearing Decision was issued, these findings were fully considered

and evaluated by the ALJ as part of the record in the case at bar.  *See* TR 21.  With regard to Dr.

Millis' Assessment, the ALJ stated:

> [Dr. Millis] assessed the claimant's residual functional capacity.
> He opined that she could frequently lift ten pounds; occasionally
> lift 20 pounds; sit, stand and walk for six hours in an eight hour
> day with the opportunity to change positions every two hours;
> perform unlimited pushing and pulling; and could perform
> unlimited climbing of ladders, ropes, scaffolds, ramps and stairs,
> balancing, stooping, kneeling, crouching and crawling.  These
> opinions are consistent with the consultative examining
> physician's opinions and with the medical evidence of record.

TR 21, 390-98.

As can be seen, the ALJ in the current proceeding considered the results of Dr. Millis'

residual functional capacity assessment before reaching his decision.  *See* TR 21, 390-98.  The

ALJ found that Dr. Millis' opinion was consistent with the consultative examining physician's

opinion and with the medical evidence of record.  Dr. Millis' assessment did not demonstrate

that Plaintiff's condition had worsened so as to warrant the re-consideration of the prior ALJ's

determination, nor does it constitute "new and material" evidence because it was included in the

record and is consistent with prior medical findings.

Because Plaintiff has failed to demonstrate that her condition has worsened since the

rendering of the prior ALJ's opinion, the current ALJ was correct that ALJ Kile's 2007

determination regarding her RFC was binding.  Plaintiff's argument fails.

**6.  Subjective Complaints of Pain**

Plaintiff contends that the ALJ did not properly evaluate her subjective complaints of

pain.  Docket No. 14.  In particular, Plaintiff argues that the ALJ did not properly credit her

claims of experiencing a pain level of six on a ten-point scale and of needing to lie down

frequently throughout the day.  *Id.*

Defendant argues that, when the ALJ assessed Plaintiff's credibility, he followed the two-

step process set forth in the Regulations.  Docket No. 17.  Defendant contends that the ALJ,

therefore, properly assessed and appropriately discounted Plaintiff's credibility.  *Id.*  Defendant

argues that the ALJ considered all the evidence and explained his rationale, and that his rationale

was supported by substantial evidence.  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively
> determined medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's testimony was not fully credible. TR 18. Specifically, the ALJ stated:

> The evidence demonstrates a history of narcotics abuse as is evidenced by the claimant's failure to take her prescribed Hydrocodone. The claimant did not explain this at the hearing and a reasonable inference is that she was either giving or selling her Hydrocodone to someone else. This obviously negatively affects the claimant's credibility as it is clear that she was not taking her medication due to her alleged back, and hip pain.
>
> The claimant also has a poor work record coupled with a need for income. She admitted at the hearing that she had not worked since her daughter was three years old. A reasonable inference is that the claimant made a choice not to work, but to stay home and raise her child. Now that her husband is unemployed, both she and he have filed for Social Security disability benefits. The undersigned has considered the claimant's testimony and reports of her

financial situation. She testified at the hearing that her husband is unemployed, and that they live in a home owned by her daughter. While the undersigned cannot definitively ascertain the claimant's subjective motivation for obtaining benefits, overall, the record clearly demonstrates a need for additional household income while the record as a whole fails to demonstrate a legitimate need based upon disability.

The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and findings made on examination.

TR 18; *see* TR 34-48, 283-93.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 18. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other

evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  TR 18.  As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

## 7. Evaluating the Testimony of the Vocational Expert

Plaintiff argues that the ALJ did not properly evaluate the testimony of Vocational Expert Edward Smith.  Docket No. 14.  Specifically, Plaintiff argues that the VE testified that Plaintiff would be unable to work based on the restrictions assigned by Nurse Smith, Mr. Loftis, and the VBHCS report.  *Id.*

Defendant argues that Plaintiff's contentions are without merit, because the restrictions upon which Plaintiff relies are restrictions that the ALJ did not ultimately find to be credible and supported by the evidence of record.  Docket No. 17.  Defendant argues that the ALJ properly incorporated the limitations that he found credible and supported by substantial evidence in the

hypothetical questions he posed to the VE, and that, accordingly, it was proper for the ALJ to

rely on the VE's testimony to support his decision. *Id.*

As a preliminary matter, both the ALJ and Plaintiff's attorney posed hypothetical

questions to the VE. TR 48-54. In particular, the ALJ posed the following hypothetical question

that incorporated the limitations that he found credible:

> Q Let's assume I would find the claimant was limited to a
> range of light work, that she shouldn't do anymore than
> occasional climbing, stooping, bending, crouching,
> crawling, or kneeling. She could stand or walk between
> two to four hours in maybe an eight hour day and sit
> between six and eight hours in a [sic] eight hour work day
> [*sic*]. And she would need to be able to change her
> positions at least every two hours as far as is position's
> concerned, at least briefly, and she shouldn't do anymore
> than occasional overhead reaching with either arm. She
> would have a residual functional capacity because of some
> mental health issues that she has as indicated both having
> had difficulty in school and also, also [*sic*] some depression
> and problems dealing with some traumatic events in her life
> to the degree that her functional capacity in [the]
> mental/emotional area would be described as found at page
> 3 of Exhibit B9F [TR 372] that she would be able to
> understand and remember simple tasks and concentrate on
> and persist for simple tasks. She will have some but not
> substantial difficulty interacting with the public, co-
> workers, and supervisors, and she can adapt to infrequent
> change and set limited goals. Given her limitations as so
> described, would there be any jobs in the regional or
> national economy that she could do?
>
> A There would, sir, based upon the information you've given
> me.
>
> Q All right.
>
> A This would be unskilled work, and it would be at a light
> exertion level. The examples that I give will follow. She
> could work as a textile checker. Locally, there's in excess

of 1,400 of those jobs, and by locally I mean the entire state of Tennessee.

Atty: How many jobs, missed the count?

VE: In excess of 1,400 of those jobs locally. Nationally, there's in excess of 41,000 of them. She could work as a sorter. Locally, there's in excess of 1,500 of those jobs and, again, locally I mean the entire state of Tennessee. Nationally, there's in excess of 86,000 of them, and she could work as a laundry folder. Locally, there's in excess of 6,000 of those jobs. Nationally, there's in excess of 83,000, and these are light and they're unskilled and otherwise meet all of the components of your hypothetical.

TR 49-50.

The ALJ also elicited the following testimony from the VE:

Q. Let's assume that we were to find as stated by Nurse Practitioner Smith in Exhibit B19F [TR 431-35], that her restrictions were as follows. That she could occasionally lift less than 10 pounds. She would be able to stand or walk less than two hours out of every eight hour work day [*sic*] and she would be able to sit less than six hours out of an eight hour day. She would be limited in the use of her upper extremities and lower extremities but I don't know to what degree as far as push/pulling and whether it's occasional, frequent, or what they're saying there. As far as the postural limitations, she shouldn't do any climbing whether it's ramps, stairs, ladders, ropes, or scaffolds. She could only occasionally do any kneeling, and she shouldn't ever do any crouching, crawling, or stooping. She should only do occasional reaching, and I presume that's with both arms. And she shouldn't have more than occasional exposure to temperature extremes, vibration, humidity or wetness or work hazards. I presume that's occasionally. That's kind of in between, in between [*sic*] frequent and, and [*sic*] none because it doesn't say what the degree of that is. Given those limitations as so described, would there be any jobs in the regional or national economy that claimant could do?

A.      Your Honor, she would be unable to perform the duties and responsibilities of any job we discussed or for that matter any job in the local or national economy.  She would be rendered unemployable.

TR 51.

In response to the ALJ's question quoted above, the VE acknowledged understanding Nurse Smith's findings.  *Id.*  As has been discussed in a previous statement of error, however, the ALJ properly considered, and discounted, Nurse Smith's opinion.

Plaintiff's attorney posed the following hypothetical questions to the VE:

Q       Mr. Smith, if you will assume a hypothetical individual the same age, education, and no relevant work history.  The claimant would be extremely limited in her activities of daily living, markedly limited in her interpersonal functioning, markedly limited in her concentration, task performance, and pace, markedly limited in her adaptation to change.  All of those restrictions being in, being in the medical reports from vocational, Volunteer Behavioral Health Care System.  How would those limitations affect any jobs that the claimant may be able to perform.

A       She would unmistakably be unemployable.

Q       Assume a hypothetical individual the same age, education, no previous work experience that has a full scale IQ of 68, that based upon the psychological consultative exam evaluation report my [*sic*] Mark Loftus [phonetic], a Social Security doctor in this case.  It states that the claimant really has not developed any remarkable work skills, and has difficulty doing detailed multi-level task [*sic*].  He states that emotionally she appears to be prone to anxiety and episodes of extreme panic attack due to post-traumatic stress disorder.  She may have difficulty relating to others in the work environment and states that her overall functional limitations in regards to her flexibility and adaptability are moderately to severely impaired.  Those restrictions there, how would that affect her past, or her, any work that you could identify today?

A      Re-read for me the last sentence.

Q      That overall, that her overall functional limitations in regard to her flexibility and adaptability are moderately to severely impaired.

A      That would, well, there's two answers. First off, it's out of my area of expertise to interpret or analyze IQ scores so I can't comment about that but I can comment about the last sentence that you just read me and that would be problem [*sic*], that'd be a problem for employment.

TR 52-53.

Although the VE opined that Plaintiff would not be able to work if the hypothetical questions posed by her attorney were accepted, as has been previously analyzed in the statements of errors above, the ALJ properly considered and discounted the opinions of Ms. Spaulding and VBHCS, and properly declined to re-consider Mr. Loftis' findings regarding Plaintiff's IQ score. The ALJ is not required to adopt the limitations outlined in the hypothetical questions posed to the VE by Plaintiff's attorney, because the ALJ need only accept the VE's testimony regarding limitations he finds credible. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779.

Because the ALJ's hypothetical question accurately represented Plaintiff's limitations as he found credible, the ALJ properly relied on the VE's answer to the hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky*, 35 F.3d at 1036; *Hardaway*, 823 F.2d at 927-928; and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim on this point fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge